Nathan Brown (SBN 033482)
ILUMI LAW
15100 N 78th Way, Suite 203
Scottsdale, AZ 85260
Phone: 520-955-9164
Email: NB@ilumilaw.com

*Attorney for Plaintiff and the Proposed Classes*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darren MacDonald, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>Citiea Realty Group, LLC, a Delaware company,<br><br>*Defendant.* | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

**CLASS ACTION COMPLAINT**

This case addresses a disturbing trend whereby real estate brokerages train real estate agents to cold call consumers without consent violating the Telephone Consumer Protection Act ("TCPA"). Plaintiff Darren MacDonald ("Plaintiff MacDonald" or "MacDonald") brings this Class Action Complaint and Demand for Jury Trial against Defendant Citiea Realty Group, LLC, ("Defendant" or "Citiea") to stop the Defendant from violating the TCPA by training its agents to place telemarketing calls to consumers without consent including calls to phone numbers

that are registered on the National Do Not Call registry ("DNC") and calls that are placed using a pre-recorded voice message. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff MacDonald, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff MacDonald is a resident of Scottsdale, Arizona.

2. Defendant Citiea is a company registered in Delaware, with its headquarters located in Scottsdale, Arizona. Defendant Citiea conducts business throughout this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227.

4. This Court has personal jurisdiction and venue is proper since Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District and into this District where the Plaintiff resides.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, “Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people’s representatives in Congress have been fighting back.” *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service “YouMail,” 4.5 billion robocalls were placed in June 2025 alone, at a rate of 148.8 million per day. www.robocallindex.com (last visited July 7, 2025).

10. The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13. Defendant Citiea is a real estate brokerage that works with consumers who want to buy or sell real estate who will pay agents a commission for their services.[3]

14. Citiea is composed of 4 additional brokerages: 72Sold, Homes2X, HLN, and Just990.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/citiea/about/



[4]

15. Citiea agents share their commissions with Citiea, who generates revenue from each real estate transaction:



[5]

16. Citiea has a vested interest in the success of its real estate agents, as those agents generate revenue for the company.

---

[4] https://www.facebook.com/teresahague72
[5] https://www.glassdoor.com/Community/real-estate-5/join-citiea-realty-group-where-real-leads-meet-real-closingsare-you-a-licensed-real-estate-agent-looking-for-a-smarter

17. Citiea provides leads to its real estate agents, a CRM to manage them, and the company even does marketing on behalf of its agents:

**Residential Real Estate Sales Listing Specialist**
Citiea Realty · Phoenix, AZ (Hybrid)

**Join CITIEA Realty Group – Where Real Leads Meet Real Closings**
Are you a licensed real estate agent looking for a smarter way to grow your business?
At CITIEA, we invest heavily in **digital, local, and referral marketing** to generate a consistent stream of warm seller leads all routed directly to our agents.
**What you get:** ✓ Exclusive, high-quality leads ✓ Automated CRM + marketing support ✓ Hands-on training for conversion success ✓ Fair splits + performance-based bonuses ✓ Supportive team culture
**We handle the marketing. You handle the closing.**
Apply now to see what it's like to work with a brokerage that *invests in your pipeline*.
**Responsibilities**

- Assist clients in buying, selling and properties while providing expert advice throughout the process.
- Conduct market research to stay informed about current trends, property values, and neighborhood dynamics.
- Communicate effectively with clients to understand their needs and preferences, ensuring a personalized experience.
- Negotiate offers and counteroffers on behalf of clients to achieve the best possible outcomes.
- Ensure compliance with Fair Housing regulations and all relevant real estate laws.
- Manage property listings, including creating marketing materials and hosting open houses.
- Provide excellent customer service by addressing client inquiries promptly and professionally.
- Maintain strong relationships with clients to encourage referrals and repeat business.
- Stay updated on changes in real estate laws and market conditions to provide informed guidance. [6]

## CITIEA DIRECTS ITS REAL ESTATE AGENTS TO ENGAGE IN COLD CALLING TO GENERATE BUSINESS

18. Citiea provides training, coaching, and ongoing education to its real estate agents, which includes 3 company-wide zoom training sessions each week:

---

[6] https://www.linkedin.com/jobs/view/residential-real-estate-sales-listing-specialist-at-citiea-realty-4238817042/

**Join Citiea: Where Innovation Meets Success!**

Are you ready to take your real estate career to the next level?

Citiea is not just another brokerage—we're a powerhouse of opportunity! We don't just train agents—we **empower** them with the tools, strategies, and step-by-step guidance they need to win in today's market.

🌟 **Why Join Us?**

✔️ **Exclusive Training** – National Zoom sessions 3x a week to sharpen your skills and boost your confidence.

✔️ **Proven Success Models** – Leverage cutting-edge programs that drive results.

✔️ **Supportive Team Culture** – We're in this together—coaching, guiding, and celebrating your wins. [7]

19. Citiea directs its real estate agents to generate business by placing cold calls to consumers.

20. Citiea is aware and ratifies the cold calling its agents engage in to generate business, even if this conduct is in violation of the DNC or includes the use of automated technology to place pre-recorded calls to consumers.

21. 72SOLD is a brand owned/operated by Citiea.[8]

22. Consumers have posted complaints online about unsolicited calls they received from 72SOLD, including:

- "… I will happily show the ***numerous texts and calls from this company, even after I asked them to stop contacting me***. The review represents my experience with this horrid company…"[9] (emphasis added)
- "The salesman, I say salesman, not realtor, who came to my house had someone else on his paperwork as owner. His mistake. I decided to list

[7] https://www.facebook.com/groups/967311319972094/posts/9995677797135356/
[8] https://citiea.com/72-sold
[9] https://www.google.com/search?q=72sold

with another agent due to the salesman's inability to get my name right. He called me multiple times by the other, wrong, alleged owner's name. He even argued with me, that the county had this other person listed as owner. Even after I showed him the county website with me properly listed as owner he continued to argue about it, saying his system couldn't be wrong. I sent him packing. ***He continued to call***, wrong name and all, until I blocked his number…"[10] (emphasis added)

- "All of the 5-star reviews are from their 'partners' and 'directors'. They all have been ***spamming my phone with unsolicited offers*** to sell my house because they never read the details of our house listing. Most recently I've gotten unsolicited texts from David Newman and Kyle Price, both of which are listed as agents of Hague Partners exclusively representing 72SOLD in my area."[11] (emphasis added)

23. As will be established, Plaintiff MacDonald received unsolicited calls from, or on behalf of Samuel ("Sammy") DeStefano, a Citiea real estate agent.

24. DeStefano is a top performing Arizona agent who was ranked in the top 10% of elite agents in Phoenix, Arizona while working for Citiea:

[10] Id.
[11] Id.



[12]

25. DeStefano's social media makes numerous references to his business generation tactics which focus on cold calling, including:



[13]

[12] https://www.instagram.com/p/DI12aPxTlo2/?hl=en
[13] https://www.instagram.com/p/DCMrOlJy99m/?hl=en




sammydestefano_arizonarealtor • Follow
The Clark Team - REAL Broker, LLC

sammydestefano_arizonarealtor April 1 - April 24th Prospecting to find people that need my help.

Numbers soon to improve.

#listingagent #realtor #prospect #forsale #family #home #raleigh #northcarolina #wakecounty #realestate

113w

melissa.noelle.rose 🔥🔥🔥

113w 1 like Reply

miltonjamesorlando That's some part time numbers

113w 1 like Reply

View replies (1)

18 likes
April 24, 2023 [14]

Sammy DeStefano · Follow
October 25, 2024 ·

As a young kid my parents thought there might be something wrong because I would not look people in the eye when I spoke to them... as I was responding my eyes with trail and stare down at my feet. I met with specialists and a therapist just to reach the conclusion that I was extremely shy and feared speaking publicly...

Anyone that knows me today would laugh at that and have a hard time believing it was true.

One more example that you can overcome anything with enough repetit... **See more**



[15]

[14] https://www.instagram.com/p/Crbsh--PeJO/?hl=en
[15] https://www.facebook.com/profile/100009375798421/search/?q=prospecting

**Sammy DeStefano**
People hire and work with me because I help them get what they want in the time they want.

**About**

I spent 6 years in car sales working for BMW in Phoenix, Arizona which got me accustomed to not only sales but more importantly rain making and prospecting. Initially I got into real estate because I had reached my ceiling at my BMW dealership as a business development center caller, sales guy, and ultimately a finance director. I sold many cars to Realtors however 99% made less than $100k annually and I was well past that in car sales however, I met a top producer after almost 5 years who made $800k + only selling residential real estate and wrote a check for a BMW 750Li. That made me question what I thought about agents - when I asked him what the difference was between him and the 100 other agents I sold BMW's to over the years, he replied "Most agents are lazy and reactive and that he was proactive and found his own business." Later I found out that he was a Mike Ferry agent, a training company that preaches old school 'phone prospecting and door knocking' to find business.

I left the dealership and began getting my license. Joined Mike Ferry Premier coaching within 90 days and was off to the races. My first year, I sold 30 homes (all expired and canceled listings that I called), my second year, I sold 35 homes from January to June with a goal of 60 homes sold for the year. The rest is history... I am proactive and find my own business, calling and door knocking, and there is more than enough clients to help out there. My main income has been from residential real estate and I have saved a large portion to begin investing. My strength is prospecting (5+ hours a day) and my weakness (for now) is delegating.

If your strength matches my weakness and vise versa, message me and lets put some business together. [16]

26. DeStefano is so open about his cold calling tactics, he has been featured in podcasts and YouTube videos where he discusses the importance of cold calling, including:

**F*@& Being Patient & Other Lessons — Sammy DeStefano, AZ**

The Neighborhood Realtor | Real Estate Pod...
21 subscribers
Subscribe 2 Share Download Clip ...

17 views Nov 12, 2024
This week's Neighborhood Realtor is Sammy DiStefano, a successful Realtor who transitioned from car sales to real estate. Sammy shares his journey, discussing the challenges he faced in the car industry, his initial disdain for Realtors, and how mentorship played a crucial role in his success. He emphasizes the importance of cold calling and building relationships through follow-up, providing valuable insights for aspiring real estate agents. In this engaging conversation, Sammy DeStefano, a successful realtor in Arizona, shares his insights on the importance of storytelling in real estate, building a strong personal brand, and the significance of nurturing client relationships. He emphasizes the need for realtors to embrace their role as salespeople and to navigate challenges with confidence. The discussion also touches on the balance between long-term planning and short-term marketing strategies, as well as the value of creating meaningful connections with clients through regular communication and updates.

Cold calling and door knocking are essential strategies for new agents.
Building relationships through follow-up is crucial for long-term success.
Storytelling is crucial in real estate to connect with clients.
Great Realtors can narrate the entire journey of a transaction.
Salespeople must embrace their role to succeed in real estate. [17]

---

[16] https://www.linkedin.com/in/sammy-destefano-166476106/
[17] https://www.youtube.com/watch?v=ryNVEli3MrI




Sammy DeStefano has had quite the incredible journey in his real estate career. With his 10+ years of experience in the car sales industry, Sammy wanted a more proactive career for himself. Licensed in 2020, Sammy has quickly become a very successful REALTOR® with his prioritization of consistent communication with past and present clients as well as focusing on tasks such as cold calling and time-blocks. Listen to the newest episode above to hear crucial tips and tricks from Sammy on how to grow your real estate business. [18]

27. DeStefano was employed by Citiea on February 13, 2025:

[18] https://crushitinre.com/from-the-car-industry-to-real-estate-tips-to-success-with-sammy-destefano/



# Individual License

The following information was retrieved from the Department's database at 6/29/2025 11:20:43 AM. The information presented reflects the database records at the time of your inquiry; however, it will not reflect pending updates which are being processed by the Department.

**Individual License Details**

| | |
|---|---|
| **License Number** | SA691044000 |
| **Name** | DESTEFANO, SAMUEL FRANK |
| **Nickname** | SAMMY DESTEFANO |
| **License Status** | Active |
| **License Type** | Real Estate Salesperson |
| **PC/PLLC Name** | SAMUEL F DESTEFANO PLLC |
| **Original Date** | 7/6/2020 |
| **Expiration Date** | 7/31/2026 |

**Current Employer Details**

| | |
|---|---|
| **Employer** | CITIEA REALTY GROUP LLC (LC712500000) |
| **Hire Date** | 2/13/2025 |
| **Employment Type** | Salesperson |
| **Designated Broker** | DIGNAN, LAWRENCE (BR100417000) |

[19]

28. A cursory look at DeStefano’s social media or even his Linkedin profile, as shown above, make it clear that he relies heavily on cold calling to generate business.

29. Indeed, from what was shown above, DeStefano has a reputation in the real estate industry for cold calling.

30. DeStefano is not the only Citiea agent who is open about placing cold calls to generate business.

31. Marty Logan, a Citiea agent in Scottsdale, Arizona has been featured on the Citiea Leaderboard for current month listings in July of 2025:

[19] https://services.azre.gov/PdbWeb/IndividualLicense/ViewIndividualLicense/300100



[20]

32. Logan works in the same office as Greg and Teresa Hague, who should be aware of Logan's cold calling practices, as he does it right under their roof.[21]

33. Logan is open about the fact that he places a lot of cold calls to generate business:

---

[20] https://www.instagram.com/p/DMY0hRQyA1b/
[21] https://www.instagram.com/p/DMMTBGvpmsJ/



Marty L. · 3rd+
Scottsdale Real Estate Advisor | Certified Negotiator | Fast Sales | Luxury...
3w ·

🧠 The Secret to Real Estate Success Isn't Strategy—It's Sincerity
By Super Agent Logan

In real estate, everyone talks about tactics, scripts, and conversion strategies.
I use them too—because they work.

But if you really want to thrive in this business, there's something more powerful than any technique:
👉 You have to genuinely care about people.

Cold calling isn't glamorous. But I do it. A lot.
And the reason I get invited past the front door—even into the home of an NFL [22]

34. Citiea should have been aware that DeStefano and Logan, among other agents are placing cold calls on Citiea's behalf to generate business, especially since DeStefano was recognized as a top 10% elite agent in Phoenix, Arizona[23] and Logan is a top agent, as shown above.

35. Citiea has instead turned a blind-eye to the cold calling its agents engage in, as this cold calling results in revenue for the company through split commissions.[24]

36. As a result, Citiea is vicariously liable for the unlawful telemarketing activities that it either directs its real estate agents to engage in, and the unlawful telemarketing activities that it ratifies to generate business.

---

[22] https://www.linkedin.com/posts/marty-logan-27b7b829_the-secret-to-real-estate-success-isn-activity-7344388512068091904-0MIC/
[23] https://www.instagram.com/p/DI12aPxTlo2/?hl=en
[24] https://www.facebook.com/profile/100063755239828/search/?q=cold%20call

37. In response to these calls, Plaintiff MacDonald brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

**PLAINTIFF MACDONALD'S ALLEGATIONS**

38. Plaintiff MacDonald is the subscriber and sole user of the cell phone number ending with 5850.

39. Plaintiff MacDonald registered his cell phone number on the DNC on August 27, 2003.

40. Plaintiff MacDonald uses his cell phone number for personal use only as one would use a landline telephone number in a home. Such use includes speaking to family and friends.

41. Plaintiff MacDonald's cell phone number is not associated with a business and is not used for business-related purposes.

42. Plaintiff MacDonald pays for the use of his cell phone personally. It is not reimbursed by a business.

43. On June 28, 2025 at 5:46 PM, Plaintiff MacDonald received an unsolicited call to his cell phone from 623-287-4061.

44. This call was not answered.

45. On June 28, 2025 at 8:12 PM, Plaintiff MacDonald received a 2nd unsolicited call to his cell phone from 623-287-4061.

46. This call was not answered, but a pre-recorded voicemail was left stating:

> "Hi, this is Anne and I work with Sammy, your neighborhood realtor. Just a quick heads-up, we just sold your neighbor David and Susan's home a few rows up, and there will be (unintelligible), and we often see other neighbors thinking about selling when this happens. Just wanted to share what we got for them and see if you have any plans. We'd love to help. Call us back here or reach Sammy directly at 919-454-6482. Thank you."

47. Plaintiff MacDonald could tell the voicemail was pre-recorded because it begins with 1 second of dead silence, then 5 seconds of background sounds, followed by another second of silence before the generic message plays.

48. Plaintiff does not have neighbors named David and Susan.

49. On July 7, 2025 at 8:50 AM, Plaintiff MacDonald received a 3rd unsolicited call to his cell phone from 623-287-4061.

50. This call was not answered, but a pre-recorded voicemail that is identical to the previous voicemail was left stating:

> "Hi, this is Anne and I work with Sammy, your neighborhood realtor. Just a quick heads-up, we just sold your neighbor David and Susan's home a few rows up, and there will be (unintelligible), and we often see other neighbors thinking about selling when this happens. Just wanted to share what we got for them and see if you have any plans. We'd love to help. Call us back here or reach Sammy directly at 919-454-6482. Thank you."

51. This message has the exact same script as the previous prerecorded voicemail. Not only that, the timing of this message of the content, is the exact same as the previous message. In addition, the intonations and pauses are the exact same

as well, making it even more clear that the two message are the same prerecorded message once the woman's voice starts talking.

52. 919-454-6482 is the direct phone number for DeStefano.[25]

53. Plaintiff MacDonald has never done business with Citiea or any of its real estate agents, including DeStefano.

54. Plaintiff MacDonald has never provided his cell phone number to Citiea or any of its real estate agents.

55. The unauthorized solicitation telephone calls that Plaintiff MacDonald received from or on behalf of Defendant Citiea have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

56. Plaintiff MacDonald listened to both of the voicemails that he received from, or on behalf of the Defendant.

57. Seeking redress for these injuries, Plaintiff MacDonald, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

**CLASS ALLEGATIONS**

58. Plaintiff MacDonald brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

---

[25] https://www.instagram.com/p/DCMrOlJy99m/?hl=en

**<u>Pre-recorded No Consent Class</u>:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendant or an agent on Defendant's behalf called on their cellular telephone number (2) using an artificial or pre-recorded voice.

**<u>Do Not Call Registry Class:</u>** All persons in the United States who from four years prior to the filing of this action through class certification (1) a Citiea affiliated agents called more than one time in the aggregate, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant's agent called Plaintiff.

59. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff MacDonald anticipates the need to amend the Class definitions following appropriate discovery.

60. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

61. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant placed calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(c) Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

62. **Adequate Representation**: Plaintiff MacDonald will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff MacDonald has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff MacDonald and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the

financial resources to do so. Neither Plaintiff MacDonald nor his counsel have any interest adverse to the Classes.

63. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Gomez. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff MacDonald and the Pre-recorded No Consent Class)**

64. Plaintiff MacDonald repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

65. Defendant transmitted unwanted telephone calls to Plaintiff MacDonald and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

66. These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

67. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## <u>SECOND CLAIM FOR RELIEF</u>
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff MacDonald and the Do Not Call Registry Class)**

68. Plaintiff repeats and realleges paragraphs 1 – 63 of this Complaint and incorporates them by reference herein.

69. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

70. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

71. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff MacDonald and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

72. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff MacDonald and the Do Not Call Registry Class received more than one telephone call and/or text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

73. As a result of Defendant's conduct as alleged herein, Plaintiff MacDonald and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

74. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff MacDonald requests a jury trial.

**DARREN MACDONALD**, individually
and on behalf of all others similarly situated,

DATED this 6th day of January, 2026.

By: /s/ Nathan Brown

Nathan Brown (SBN 033482)
ILUMI LAW
15100 N 78th Way, Suite 203
Scottsdale, AZ 85260
Phone: 520-955-9164
NB@Ilumilaw.com

Rachel E. Kaufman
Kaufman P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
(305) 469-5881
Email: rachel@kaufmanpa.com

*Attorneys for Plaintiff and the Proposed Classes*